**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000801
26-SEP-2025
07:52 AM
Dkt. 83 SO**

NO. CAAP-24-0000801

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DANE KUPONO NAKAMA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-22-0000281)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, McCullen and Guidry, JJ.)

Defendant-Appellant Dane Kupono Nakama (**Nakama**) challenges his conviction for one count of Unauthorized Control of a Propelled Vehicle in the First Degree (**UCPV 1st**), contending the trial court plainly erred in not instructing the jury on the included offense of UCPV in the Second Degree (**UCPV 2nd**).[1] We affirm.

---

[1] The only difference between UCPV 1st and UCPV 2nd is the state of mind required for conviction; otherwise, the offenses are identical. UCPV 1st under Hawaii Revised Statutes (**HRS**) § 708-836 (2014 & 2023 Supp.)

Nakama appeals from the August 29, 2024 "Judgment of Conviction and Sentence; Notice of Entry" (**Judgment**), entered by the Circuit Court of the Second Circuit (**Circuit Court**).[2] Nakama's single point of error contends the Circuit Court should have sua sponte instructed on the included offense of UCPV 2nd.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Nakama's point of error as follows.

Following a May 2024 jury trial, the jury found Nakama guilty as charged of UCPV 1st. On August 29, 2024, Nakama was sentenced to a five-year term of imprisonment, and he timely appealed.

The pertinent trial evidence reflected that complaining witness Alfredo Espericueta's (**Espericueta**) near-mint, undamaged motorcycle was stolen from his condo parking lot sometime between 6:00 p.m. on March 30, 2022, and the next morning at 9:00 a.m. on March 31, 2022.

The next day, April 1, 2022 around 12:30 p.m., Maui Police Department (**MPD**) Officer Teanu Rickard (**Officer Rickard**) responded to a report of the motorcycle's location at mile marker 12 on Honoapi'ilani Highway, and found it parked on the side of the road next to a sedan. The sedan was "derelict looking, like it had been parked and hadn't been moved in a

---

provides that a person commits the offense "if the person <u>intentionally or knowingly</u> exerts unauthorized control over another's propelled vehicle by operating the propelled vehicle without the owner's consent." (Emphasis added.) UCPV 2nd under HRS § 708-836.1 (2014 & 2023 Supp.) provides that a person commits the offense "if the person <u>recklessly or negligently</u> exerts unauthorized control over another's propelled vehicle by operating the propelled vehicle without the owner's consent." (Emphasis added.)

[2] The Honorable Kelsey T. Kawano presided.

while[,]" and there was a "Caucasian male in the passenger seat . . . behind the driver's seat[.]"  Officer Rickard observed a second male, whom he identified as Nakama, "hunched down and talking to the guy in the backseat" of the sedan.  Officer Rickard drew his taser and told Nakama not to move, but Nakama became "fidgety," backed away, attempted to hide behind a tree, and mounted the motorcycle.  Officer Rickard ordered Nakama to get off the motorcycle; Nakama complied, but then ran across the highway and hid in the brush.  Officer Rickard testified that he and approximately five other MPD officers searched the brush for Nakama for 20 to 30 minutes, without success.  Espericueta was called to pick up the motorcycle, which MPD released to him at approximately 1:21 p.m.

Espericueta testified that upon arrival at the motorcycle location, he observed that his motorcycle was hot-wired, i.e., a key was not necessary to start it.  Espericueta also observed that the ignition switch wires had been damaged, "the handlebar grips were all shredded," "[t]he gas cap was broken off," the mirror had been scratched, and other parts were missing.  Less than ten minutes after the MPD officers left the scene, a male whom Espericueta identified as Nakama "all of a sudden . . . appear[ed]," asking, "Where's my bike?"  Espericueta responded, "What do you mean your bike? . . . That's my bike."  Nakama then ran toward the motorcycle; Espericueta began running behind him; Nakama jumped on the motorcycle; and Espericueta, who by that time was right beside Nakama, told Nakama "Get off my bike[,]" but Nakama "took off" on the motorcycle.  MPD later found the motorcycle again at a different location, unattended.

3

Nakama exercised his right to not testify and did not present any evidence. Defense counsel argued lack of identification in closing argument. The jury was instructed on UCPV 1st, and the record reflects neither party requested a UCPV 2nd instruction.

Nakama contends that the record presented "a rational basis to conclude that [Nakama] exerted unauthorized control over the motorcycle without the knowing or intentional state of mind required for the felony offense."

HRS § 701-109(5) (2014 & 2023 Supp.) provides: "The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." "[J]ury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." State v. Flores, 131 Hawaiʻi 43, 51, 314 P.3d 120, 128 (2013) (citation omitted).

Nakama argues "it is reasonable to infer that [Nakama] may have received or purchased the motorcycle second-hand" because "there was no evidence presented by the State showing how or when [Nakama] first came into possession of the motorcycle." This argument is unpersuasive. Showing "how or when" Nakama **first** possessed the motorcycle is not an element of UCPV that the State must prove.

Nakama argues "[a] rational juror could have concluded that [Nakama] encountered or purchased the motorcycle in its already-damaged state and either failed to consider the implications (i.e., *negligence*) or ignored suspicious signs

4

(i.e., *recklessness*) without forming the specific intent or knowledge that the motorcycle was stolen." This argument lacks any basis in the evidence. There was no testimony by any witness or any other evidence to support a reasonable inference that Nakama "may have received or purchased the motorcycle second-hand" or that Nakama "encountered or purchased the motorcycle in its already-damaged state."

Nakama argues that his words and conduct in his interactions with Officer Rickard and Espericueta supported a rational basis for the Circuit Court to give the UCPV 2nd instruction. Specifically, Nakama claims his conduct "when first contacted by Officer Rickard," where Nakama "did not flee with the vehicle[,]" and his subsequent actions, could be interpreted as "inconsistent with the mindset of someone intentionally trying to permanently deprive the owner of the vehicle, and more consistent with negligent or reckless use without proper awareness of ownership rights"; and Nakama's first words when he encountered Espericueta ("Where's my bike?") reflected "a subjective belief of ownership or entitlement."

"[T]he intentional or knowing state of mind required by HRS § 708-836 applies to the authorization element," that is, it applies to "the attendant circumstance of the person's control/operation being without the registered owner's consent." State v. Mainaaupo, 117 Hawaiʻi 235, 249-50, 178 P.3d 1, 15-16 (2008) (italics omitted). In this case, the grade of offense of UCPV 1st or UCPV 2nd, turns on whether the evidence showed Nakama was "aware" that his control was unauthorized, establishing a knowing state of mind under HRS § 702-206(2)(b) for UCPV 1st, or whether Nakama consciously disregarded a substantial and unjustifiable risk that his control was

unauthorized, establishing a reckless state of mind under HRS § 702-206(3)(b) for UCPV 2nd.

Here, the record, which includes Officer Rickard's body-worn-camera video, reflects that Nakama was evasive throughout his encounter with Officer Rickard. Nakama kept moving and fidgeting when told not to do so; Nakama tried to hide from the officer behind a tree; Nakama mounted the motorcycle, then got off when ordered to do so; and Nakama ran across the highway and disappeared, leaving the motorcycle. Such conduct reflects Nakama's awareness that his control of the motorcycle was unauthorized, establishing a knowing state of mind for UCPV 1st, and does not show a rational basis for the jury to acquit Nakama of the charged offense. See HRS § 701-109(5).

The sole basis for Nakama's purported claim of ownership rests on his words, "Where's my bike?". This statement, viewed in its evidentiary context, does not support Nakama's argument. Nakama left the motorcycle on the side of the highway while the MPD searched for him in the bushes for 20 to 30 minutes. Less than ten minutes after the officers left, Nakama reappeared, asking Espericueta, "Where's my bike?"; and Espericueta immediately corrected Nakama, saying "What do you mean your bike? . . . That's my bike[,]" and instructing Nakama, "Get off my bike." This record, along with the hot-wired, damaged state of the motorcycle and Nakama's conduct with the officers, reflects Nakama was aware that his control of the motorcycle was without the registered owner's consent and established the knowing state of mind for UCPV 1st. Thus, the record does not show a rational basis for the jury to acquit Nakama of UCPV 1st in favor of the included offense UCPV 2nd.

6

See id. We conclude the Circuit Court did not plainly err in not instructing the jury on UCPV 2nd.

For the foregoing reasons, we affirm the August 29, 2024 Judgment entered by the Circuit Court of the Second Circuit.

DATED: Honolulu, Hawai'i, September 26, 2025.

On the briefs:

Brandon M. Segal,
for Defendant-Appellant.

Arleen Y. Watanabe,
Deputy Prosecuting Attorney
County of Maui,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge